IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH A. ASHTON, SR. and | ) | |
| WILLIAM E. ASHTON, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs | ) | Civil Action No. 10-803 |
| | ) | Chief Judge Lancaster |
| CITY OF UNIONTOWN, EDWARD | ) | Magistrate Judge Mitchell |
| FIKE, JASON COX and GEORGIA TOMI, | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that the motion to dismiss the Amended Complaint
(Docket No. 20), filed by the Defendants, be granted with respect to Count I and that Count II be
dismissed pursuant to 28 U.S.C. § 1367(c)(3).

II.      Report

Plaintiffs, Kenneth A. Ashton, Sr. and his brother, William E. Ashton, bring this civil
rights action pursuant to 42 U.S.C. § 1983 against Defendants, the City of Uniontown, Edward
Fike (Mayor of Uniontown), Jason Cox (Uniontown Chief of Police) and Georgia Tomi, arising
out of events that occurred on June 12, 2008.  Plaintiffs allege that, on that date, Defendant
Tomi, a meter maid for the City of Uniontown, struck William Ashton when he attempted to
move his motorcycle so that she could not issue him a traffic citation; that Mayor Fike refused to
investigate the incident or discipline Tomi; and that Chief Cox not only refused to investigate the
incident but also later conspired with Tomi to retaliate against Plaintiffs by filing citations
containing false charges against them in order to conceal Tomi's assault.

Currently pending for resolution is a motion to dismiss the complaint, brought on behalf

of the Defendants.  For the reasons that follow, the motion should be granted with respect to Count I and the state law claims in Count II should be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Facts

On June 12, 2008, William Ashton's motorcycle was parked on East Main Street in Uniontown, Fayette County, Pennsylvania when he noticed that a meter maid (Defendant Tomi) was about to write a traffic citation for his motorcycle.  He told her that he was going to move his motorcycle and began to get on.  Tomi struck him with a closed fist.  (Am. Compl. ¶¶ 18-20.) Plaintiffs demanded Tomi's name and the name of her supervisor so that they could make a complaint regarding her conduct, but she refused to respond.  They informed her that they were going to the Mayor's office to make a complaint about her and she reluctantly followed.  (Am. Compl. ¶¶ 26-29.)

At Uniontown City Hall, William Ashton was informed that the Mayor was unavailable. While Kenneth Ashton was waiting outside City Hall with Defendant Tomi, Chief Cox approached him and asked what the problem was.  Kenneth Ashton explained and Chief Cox asked Tomi if she did in fact strike William Ashton.  She responded that she did.  (Am. Compl. ¶¶ 30-33.)  Plaintiffs allege that "[d]uring their encounters with Defendant Tomi and Defendant Cox, Plaintiffs exercised their rights to free speech and protested the treatment that they were being subjected to by Defendant Tomi."  (Am. Compl. ¶ 34.)

Plaintiffs allege that, as a result of exercising their First Amendment rights to free speech, Defendant Tomi retaliated against them by making false statements against them and Defendant Cox retaliated against them by refusing to investigate the incident, refusing to discipline and reprimand Defendant Tomi, filing multiple citations against them and making false statements

against them.  (Am. Compl. ¶¶ 35-36.)  They further allege that, subsequently, Defendants Cox and Tomi used the legal process including but not limited to filing citations against both Plaintiffs and making false statements against them in order to conceal Tomi's assault on William Ashton.  (Am. Compl. ¶ 41.)

Defendants have attached to their motion to dismiss two state court docket sheets which indicate that Kenneth Ashton was charged by Chief Cox on June 18, 2008 with one count of disorderly conduct by using obscene language or making an obscene gesture, 18 Pa. C.S. § 5503(a)(3), and one count of harassment by following someone in or about a public place, 18 Pa. C.S. § 2709(a)(2); that he was found guilty of these charges by Magisterial District Judge Michael M. Metros on October 22, 2008; that he appealed to the Court of Common Pleas of Fayette County, but was again found guilty by Judge Steve P. Leskinen on November 19, 2009 and fined $300.00 for each citation, plus costs for the hearing of $131.00 and any additional costs assessed by the Clerk of Court's Office by reason of the appeal.  (ECF No. 21 Ex. A.) They have also submitted a state court docket sheet indicating that Chief Cox cited William Ashton on June 16, 2008 for the traffic offense of driving with an improper class of license, 75 Pa. C.S. § 1504(a), and that he was found guilty of this charge before Magisterial District Judge Michael M. Metros on July 16, 2008.  (ECF No. 21 Ex. B.)

Procedural History

Plaintiffs filed their original complaint on June 11, 2010 (ECF No. 1).  On October 26, 2010, Defendants filed a motion to dismiss (ECF No. 13), in response to which Plaintiffs filed an Amended Complaint on November 18, 2010 (ECF No. 18).  The Amended Complaint asserts that Defendants violated Plaintiffs' First, Fourth and Fourteenth Amendment rights in claims alleged pursuant to § 1983 and also alleges supplemental state law claims of assault, battery,

abuse of process, intentional infliction of emotional distress, negligence, gross negligence, defamation, fraud, civil conspiracy and violation of the Pennsylvania constitution. On December 13, 2010, Defendants filed a motion to dismiss the Amended Complaint.

Standard of Review

The Supreme Court has recently stated that:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court of Appeals has stated that:

To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.... [In addition,] a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Thus, the documents attached to the Defendants' brief, specifically the

docket sheets from state court proceedings, may be considered without converting the motion into a motion for summary judgment.

Defendants argue that: 1) all of Plaintiffs' First, Fourth and Fourteenth Amendment claims, with the exception of William Ashton's claim that Defendant Tomi assaulted him in retaliation for exercising his First Amendment rights, are barred by the doctrine of <u>Heck v. Humphrey</u>; 2) William Ashton cannot state a claim under the Fourth Amendment arising out of Defendant's Tomi's alleged assault because the Fourth Amendment only applies in the context of a search or seizure and meter maids do not have arrest powers; 3) Plaintiffs have failed to state a claim under the Fourteenth Amendment for either procedural or substantive due process violations; 4) Plaintiffs fail to state a claim against Mayor Fike in his individual capacity; 5) the official capacity claims against Defendants Fike, Cox and Tomi are redundant and should be dismissed; 6) the Amended Complaint fails to state a claim for negligence or gross negligence and Cox and Tomi would be immune from such claims in any event; 7) Tomi and Cox are immune from all intentional tort claims in their official capacities; 8) the Amended Complaint fails to state a claim for fraud; 9) the Amended Complaint fails to state a claim for assault and battery against Defendant Cox; 10) the Amended Complaint fails to allege sufficient facts to state a claim for state law conspiracy; 11) municipalities and all Defendants in their official capacities are immune from punitive damages; 12) the Amended Complaint fails to state a claim for intentional infliction of emotional distress; 13) there is no cause of action for damages arising out of alleged violations of the Pennsylvania Constitution; 14) the Amended Complaint fails to state a claim for abuse of process; and 15) the Amended Complaint fails to state a claim for defamation.

In their response to the motion to dismiss, Plaintiffs indicate that they agree to withdraw

the claim that Defendants filed citations in retaliation for their exercise of their First Amendment rights (ECF No. 24 at 5). However, they contend that: 1) their remaining retaliation claims (namely, retaliation by assaulting William Ashton, by refusing to investigate the incident, by refusing to discipline and reprimand Tomi, and by making false statements) are sufficiently pleaded and would not have the effect of impugning Kenneth Asthton's conviction on charges of disorderly conduct; 2) they can state a Fourth Amendment excessive force claim against a meter maid, regardless of whether she has arrest powers under state law, and this claim is not barred by the <u>Heck</u> doctrine because whether William Ashton committed the summary offense of improper use of class of license has no bearing on whether Tomi assaulted him; 3) in the alternative, the excessive force claim may be analyzed under the substantive due process clause of the Fourteenth Amendment and a jury could conclude that Tomi's assault of William Ashton was conscience shocking; 4) similarly, a jury could conclude that Chief Cox's failure to investigate, refusal to discipline and reprimand Tomi and making false statements against Plaintiffs conscience shocking; 5) conspiracy claims need not be pleaded with particularity; and 6) the Amended Complaint contains numerous allegations of acts by Defendant Fike in his personal capacity.[1]

<u>Section 1983 Claims</u>

It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method

---

[1] Plaintiffs have not responded to Defendants' remaining arguments.

for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994). <u>See also</u> <u>Baker</u>, 443 U.S. at 140; <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).

However, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." <u>Soldal v. Cook County, Illinois</u>, 506 U.S. 56, 70 (1992).

<u>First Amendment</u>

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. 1. "First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States." <u>NAACP v. Claiborne Hardware Co.</u>, 458 U.S. 886, 907 n.43 (1982). Plaintiffs allege that Defendants retaliated against them for exercising their First Amendment right of free speech. Therefore, the First Amendment is implicated in this case.

<u>Fourth Amendment</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. Amend. 4. This provision has been made applicable to the states by the Fourteenth Amendment. <u>Ker v. California</u>, 374 U.S. 23, 30 (1963). The Supreme Court has instructed that "all claims that law enforcement officers have used excessive force ... in the

course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." Graham, 490 U.S. at 395. See Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998).

However, the Supreme Court has also recognized that Graham:

> does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.

United States v. Lanier, 520 U.S. 259, 272 n.7 (1997). Then, in County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998), the Court clarified that all claims of executive abuse of power are governed by a shocks the conscience standard. Thus, the Court held that when a police officer pursued a speeding motorcycle and accidentally struck the passenger who fell off of it, no search or seizure occurred. Rather, the claim fell under the substantive due process clause of the Fourteenth Amendment and was examined under the shocks the conscience standard.

In this case, Plaintiffs have not alleged that Defendant Tomi's act of striking William Ashton constituted a "search" or a "seizure" for purposes of the Fourth Amendment or that it occurred incident to a search or a seizure. Defendants also note that "[t]he fact that meter maids do enforce the city's parking ordinances does not convert them to police officers," Commonwealth, Human Relations Comm'n v. Beaver Falls City Council, 366 A.2d 911, 914 (Pa. 1976), and that the Third Class City Code vests only police officers with the power to arrest, 53 P.S. § 37005. Thus, Plaintiffs cannot invoke the Fourth Amendment here.

Fourteenth Amendment

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14. The due process

clause contains both a procedural aspect and "a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." Lewis, 523 U.S. at 840 (citations omitted).  As noted above, the Supreme Court recognized a claim under the substantive due process clause arising out of an allegedly improper police pursuit which resulted in the police car striking a passenger who fell off a speeding motorcycle. Similarly, Plaintiffs' claim here arising out of Defendant Tomi's act of striking William Ashton is properly analyzed as a substantive due process claim.  See Gottlieb ex. rel. Calabria v. Laurel Highlands Regional Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001) (excessive force by public school principal fell under the substantive due process clause, not the Fourth Amendment); Martinez v. Cui, 608 F.3d 54, 64 (1st Cir. 2010) (claim that first-year resident at state hospital sexually assaulted plaintiff during an examination in the emergency room was properly evaluated as a substantive due process claim); Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001) (when officer pushed pedestrian who interrupted him as he was attempting to direct traffic and runners in a race, claim was analyzed under the shocks the conscience standard).

Defendants note that the Amended Complaint also alleges that Plaintiffs were deprived of their right "to be convicted of a crime beyond a reasonable doubt by a jury of his [sic] peers before being punished." (Am. Compl. ¶ 80.)  However, they argue that: 1) the right to a jury trial actually arises under the Sixth Amendment; and 2) the right to a jury trial arises only when a defendant is prosecuted for "serious offenses," Duncan v. Louisiana, 391 U.S. 145, 159 (1968), but offenses for which the maximum authorized sentence is six months or less are "petty" and no right to a jury trial attaches, Lewis v. United States, 518 U.S. 322, 326 (1996), and the charges here were all summary offenses.  Defendants are correct and thus no claim under the Sixth or Fourteenth Amendment arising out of Plaintiffs' failure to be provided a jury trial is implicated

here.

Heck v. Humphrey Limitation

Defendants argue that nearly all of Plaintiff's claims are barred by doctrine of Heck v.

Humphrey, 512 U.S. 477 (1994). In Heck v. Humphrey, the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87 (footnote omitted). Defendants argue that neither Plaintiff appealed his conviction

and that they do not claim that the fact of their convictions has been impugned or invalidated by

any tribunal.

Plaintiffs do not dispute this point, but argue that reaching the merits would not have the

effect of impugning Kenneth Asthton's conviction on charges of disorderly conduct because,

even if he engaged in disorderly conduct and/or harassment at one time, he could also have

engaged in protected First Amendment activity that improperly served as the basis for retaliation.

However, they cite no authority in support of this proposition and the law is to the contrary.

In Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005), an evangelist (Gilles) who was arrested

after his invective enraged students on the Indiana University of Pennsylvania campus brought

suit alleging civil rights violations. In addition, a member of his ministry group (Petit) who had

videotaped the encounter was also arrested and charged with resisting arrest, disorderly conduct

and failure of disorderly persons to disperse. Petit brought suit along with Gilles, and he raised

First Amendment claims. However, the procedural posture of their claims differed: the charges

against Gilles were dismissed, but Petit entered into the Accelerated Rehabilitation Disposition

program (ARD), which avoids trial and potential jail time and results in expungement of the record in exchange for successfully completing a probationary period.  The Court of Appeals held that Petit's claims were barred by the Heck doctrine:

> Petit's underlying disorderly conduct charge and his § 1983 First Amendment claim require answering the same question-whether Petit's behavior constituted protected activity or disorderly conduct. If ARD does not constitute a favorable termination, success in the § 1983 claim would result in parallel litigation over whether Petit's activity constituted disorderly conduct and could result in a conflicting resolution arising from the same conduct.

Id. at 209.  The court acknowledged that Petit had no recourse under state law (he could not file a habeas corpus action because he was not "in custody") but concluded nevertheless that ARD did not constitute a favorable termination and his claims were barred.  Id. at 210.

In this case, Plaintiffs did not enter into ARD programs and thus had available opportunities to appeal their convictions, yet they did not do so.  For this Court to reach the merits of Kenneth Ashton's First Amendment claim would involve delving into the question of whether he engaged in protected speech or disorderly conduct and harassment and could result in a conflicting resolution arising from the same conduct.  Similarly, Plaintiffs could not maintain that, even if William Ashton was guilty of driving with an improper class of license, he was cited for this offense out of retaliation for exercising his First Amendment rights.  Therefore, these claims are barred by Heck.  Indeed, all of the federal claims, with the exception of the substantive due process claim arising out of Defendant Tomi's act of striking William Ashton, are barred by Heck.

Plaintiffs argue that they are also alleging retaliation in the form of the assault on William Ashton, the refusal to investigate the incident, the refusal to discipline or reprimand Defendant Tomi and the making of false statements against them.  These arguments are unsupported and without merit.

First, the allegation that Defendants Tomi and Cox made "false statements" against Plaintiffs is simply another way of saying that information was provided to the district attorney and/or the police that resulted in Plaintiffs being cited or prosecuted for alleged offenses when the real motive was retaliation for their having engaged in First Amendment activity. As noted above, Plaintiffs state that they are withdrawing their claims of retaliation by citation. Moreover, Defendants argue that such claims would be barred by the <u>Heck</u> doctrine and because a plaintiff alleging a retaliatory prosecution must also plead and prove the absence of probable cause supporting the prosecution. <u>Hartman v. Moore</u>, 547 U.S. 250, 258 (2008).

Second, the alleged assault on William Ashton is not an action that could be deemed "appropriate" action by a governmental actor under any circumstances, such as an arrest or citation. Thus, it is not necessary for the Court to become involved in a dispute about what Defendant Tomi's motive was for striking him. Her action either gives rise to a claim or it does not. As stated above, the claim is properly analyzed as a substantive due process claim using the shocks the conscience standard, and this analysis follows.

Finally, the remaining allegations simply do not state cognizable civil rights claims. To the extent Plaintiffs contend that their "rights" were violated when Chief Cox failed to reprimand or discipline Defendant Tomi, they have not pointed to any rights under the Constitution that were allegedly violated by this inaction. <u>See</u> <u>Cordova v. Aragon</u>, 569 F.3d 1183, 1194 (10th Cir. 2009) (when police officer shot and killed a man who ignored all attempts to stop him and was driving a truck straight at him, allegation that city failed to reprimand the officer following this incident had no causal connection to the plaintiff's injuries).

Moreover, to the extent that Plaintiffs seek to hold supervisors liable for Defendant Tomi's actions, they have not addressed the fact that they must allege that the supervisor's acts

were the "moving force" behind the constitutional violation.  <u>Board of County Commissioners of</u>

<u>Bryan County, Okla. v. Brown</u>, 520 U.S. 397 (1997) (county could not be held liable for deputy

sheriff's use of excessive force based on the argument that sheriff failed to conduct a sufficient

background check on the deputy prior to hiring him because the hiring decision was not the

"moving force" behind the injuries the plaintiff sustained).  Defendants' alleged failure to

investigate Tomi's actions or to reprimand her did not in any way cause Plaintiffs' injuries.

<u>Substantive Due Process Claim</u>

 "To establish a substantive due process claim, a plaintiff must prove the particular

interest at issue is protected by the substantive due process clause and the government's

deprivation of that protected interest shocks the conscience."  <u>Chainey v. Street</u>, 523 F.3d 200,

219 (3d Cir. 2008) (citation omitted).  "Deprivation violates due process only when it 'shocks the

conscience,' which encompasses 'only the most egregious official conduct.'"  <u>Id.</u> (quoting

<u>United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa.</u>, 316 F.3d 392, 400 (3d Cir.

2003) (internal citations omitted).

The Court of Appeals has cited the following test for evaluating excessive force claims of

this kind:

> In determining whether the constitutional line has been crossed, a court must look
> to such factors as the need for the application of force, the relationship between
> the need and the amount of force that was used, the extent of injury inflicted, and
> whether force was applied in a good faith effort to maintain or restore discipline
> or maliciously and sadistically for the very purpose of causing harm.

<u>Gottlieb</u>, 272 F.3d at 172-73 (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In <u>Cummings</u>, a police officer (McIntire) was directing drivers and runners during a foot

race when the plaintiff (Cummings) approached him from behind to ask directions.  McIntire

spun around and angrily pushed Cummings.  He also yelled "IF YOU DON'T HAVE A

GODAMMED [sic] EMERGENCY GET THE HELL OUT OF HERE." 271 F.3d at 343. The

Court of Appeals for the First Circuit held that the claim did not meet the shock the conscience

standard:

> While there is no doubt that McIntire unnecessarily utilized physical force, we agree with the district court that the record does not permit a finding that he did so "maliciously and sadistically for the very purpose of causing harm," Johnson, 481 F.2d at 1033. At the time he acted, McIntire was juggling drivers and runners in a busy location, swiveling his head to be sure no problems arose. In such circumstances, a hard shove accompanied by abusive language, whose evident purpose-as even appellant acknowledges-was to get Cummings out of the way, does not in our view constitute the "brutal" and "inhumane" conduct necessary to establish a due process violation.
>
> The Due Process Clause is intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression," Lewis, 523 U.S. at 846, 118 S.Ct. 1708 (internal citation omitted); here, the officer's action was reactive rather than reflective, seemingly inspired by a "careless or unwise excess of zeal" in communicating his displeasure with Cummings' interruption, rather than by a purpose to harm. It is true that appellant suffered a severe injury. The severity of the injury in the ordinary case may be a fair proxy for egregious behavior leading to liability, as Johnson suggests. It is not so much here because plaintiff had an unusual medical condition, making him peculiarly vulnerable.

Id. at 345-46 (footnotes and some citations omitted). The court contrasted the situation

presented with other cases in which the defendants' conduct met the shocks the conscience

standard:

> a student blinded in one eye when a coach intentionally struck him in the head with a metal weight, see Neal [ex. rel. Neal v. Fulton County Bd. of Educ.], 229 F.3d [1069,] 1076 [(11th Cir. 2000)]; a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years, see Morris v. Dearborne, 181 F.3d 657, 668 (5th Cir. 1999); rape by a police officer in connection with a car stop, see Rogers v. City of Little Rock, 152 F.3d 790, 797 (8th Cir. 1998); a 57-day unlawful detention in the face of repeated requests for release, see Armstrong v. Squadrito, 152 F.3d 564, 582 (7th Cir. 1998); police officers aiding a third-party in shooting the plaintiff, see Hemphill v. Schott, 141 F.3d 412, 419 (2d Cir. 1998); an intentional assault by a police officer who struck a pretrial detainee twice in the head and threatened to kill him, see Johnson, 481 F.2d at 1029-30; and a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the

wall, and slapping her, see Webb v. McCullough, 828 F.2d 1151, 1159 (6th Cir.1987). The conduct in these cases, involving serious physical intrusions or sustained abuse, differs markedly from McIntire's isolated, intemperate outburst.

The encounter here has much more the feel of those cases in which courts have rejected due process claims, notwithstanding the contemptible conduct at issue. Defendants prevailed where police officers allegedly engaged in months of harassment and intimidation and pushed one plaintiff, who suffered a miscarriage two days later, see Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623-24 (1st Cir. 2000); a teacher slapped a student a single time in anger and without justification, see Lillard [v. Shelby County Bd. of Educ.], 76 F.3d [716,] 726 [(6th Cir. 1996)]; a murder suspect committed suicide after prosecutors encouraged the media to link him to a series of murders, see Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995); and, officers allegedly threatened more than once to kill the plaintiff and told her young children that if the police caught their father they would never see him again, see Pittsley v. Warish, 927 F.2d 3, 9 (1st Cir. 1991).

Id. at 346-47.  See also Gottlieb, 272 F.3d at 174-75 (when principal pushed student's

shoulder, causing her to hit a door jamb and sustain injury to her back, he acted without a

pedagogical justification and his act was thus "excessive" but he did not act with the

purpose of causing harm and therefore his act did not constitute "a brutal and inhumane

abuse of official power literally shocking to the conscience.")

Similarly, Plaintiffs allege that Defendant Tomi struck William Ashton once with

a closed fist.  Although they have alleged that William Ashton "suffered physical pain,

emotional distress, and mental anguish and continues to suffer physical pain, emotional

distress, and mental anguish" (Am. Compl. ¶ 88), using the severity of the injury in the

ordinary case as a measure does not lead to the conclusion that Tomi engaged in

egregious behavior leading to liability.  Accepting Plaintiffs' allegations as true,

Defendant Tomi may well have acted inappropriately, but her conduct does not rise to the

level of conscience-shocking behavior that is actionable under the substantive due

process clause.  Rather, this case resembles Cummings and Gottlieb and cases cited

therein in which the conduct of the defendants did not rise to the level of being

conscience-shocking and thus did not meet the standard under the substantive due process clause.

Liability of Mayor Fike

Finally, Plaintiffs seek to hold Mayor Fike liable in his individual capacity as a supervisor and policymaker for the police department. Defendants argue that they have failed to allege that Mayor Fike had any personal involvement in the actions underlying this case, that he had actual knowledge of Defendant Tomi's alleged misconduct at the time it occurred or that he acquiesced in such conduct.

Plaintiffs point to numerous paragraphs in the Amended Complaint in which they allege that Mayor Fike was a supervisory official who failed to train meter maids and police officers in the use of excessive force, that he had prior knowledge that Defendant Tomi had "mental health issues and a history of disregarding the law of this county and the rights of its citizenry" and that he disregarded citizens' complaints about officers and meter maids retaliating for the exercise of First Amendment rights (Am. Compl. ¶¶ 13-14, 60, 63, 68-69, 77.) However, "a supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." McKenna v. City of Phila., 582 F.3d 447, 460 (3d Cir. 2009). Plaintiffs have not alleged Mayor Fike had this kind of personal involvement. Therefore, they have failed to state a basis upon which he could be held liable and the claims against him should be dismissed. In addition, the City of Uniontown cannot be held liable as a municipality based on the actions of one of its personnel when there is no underlying constitutional violation. See Bright v. Westmoreland County, 380 F.3d 729, 736 n.2 (3d Cir. 2004) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

Thus, Count I, containing all of Plaintiffs' federal civil rights claims, should be dismissed. Although Defendants have also presented individual arguments for the dismissal of the state law claims in Count II, the Court should first address the issue of supplemental jurisdiction.

Supplemental Jurisdiction

The supplemental jurisdiction statute provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Plaintiffs' state law claims in Count II arise out of the same circumstances and are so related to their federal claims that they form part of the same case or controversy. See Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995). Therefore, the Court has supplemental jurisdiction over them based on its original jurisdiction over Plaintiffs' federal civil rights claims in Count I.

Subsection (c), however, provides that a district court may, in its discretion, decline to exercise jurisdiction if any of four conditions are met. One of these conditions is if "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). The Court of Appeals has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (other citations omitted). The only possible consideration would be that the statutes of limitations on Plaintiffs'

state law claims have expired.  However, Congress anticipated this issue and addressed it in the supplemental jurisdiction statute:

> The period of limitations for any claim asserted under section (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).  This section ensures that Plaintiffs' state law claims will not be considered time barred so long as they reassert them in state court within 30 days of the dismissal of this action.  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000).

In addition, it is noted that Plaintiffs assert claims under the Pennsylvania constitution. The right to seek damages for such injuries is not settled under Pennsylvania law and a number of federal district courts have concluded that no such right exists.  Kaucher v. County of Bucks, 2005 WL 283628, at *11 (E.D. Pa. Feb. 7, 2005), aff'd on other grounds, 455 F.3d 418 (3d Cir. 2006).  It would be preferable for a Pennsylvania state court to resolve this issue of first impression.  Therefore, Plaintiffs' state law claims in Count II should be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

For these reasons, it is respectfully recommended that the motion to dismiss the Amended Complaint (Docket No. 20), filed by the Defendants, be granted with respect to Count I and that Count II be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Within the time specified in the Notice of Electronic Filing, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,


s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: February 11, 2011